Kevin N. Anderson (Utah Bar No. A0100)
Scott R. Sabey (Utah Bar No. A6646)
Thomas B. Stockard (Utah Bar No. A17327)
FABIAN VANCOTT
95 South State Street, Suite 2300
Salt Lake City, Utah 84111-2323
Telephone (801) 531-8900
kanderson@fabianvancott.com
ssabey@fabianvancott.com
tstockard@fabianvancott.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| HH-SALT LAKE, LLC, a Utah limited liability Company<br><br>vs.<br><br>WEST VALLEY CITY, A UTAH MUNICIPALITY | Civil No.<br><br>**COMPLAINT**<br><br><br><br>**JURY DEMANDED** |

Plaintiff HH-SALT LAKE, LLC ("**Plaintiff**" or "**HH-SALT LAKE**") complains against Defendant West Valley City ("**Defendant**" or "**WVC**"), as follows:

## INTRODUCTION

1. This action is necessitated because of a decision by WVC to unconstitutionally utilize certain chapters of its Municipal Code to regulate the speech of a business that WVC seemingly finds unsavory, but that WVC admits does not meet its own definition of a "Sexually Oriented Business" that would be subject to heightened zoning restrictions.

2. WVC seeks to infringe upon Plaintiff's constitutionally guaranteed rights of equal protection and free speech by claiming that its municipal code places zoning restrictions on businesses that sell lingerie. The restrictions WVC seeks to impose are more onerous than those imposed on other general retail establishments, and the thresholds used to define a "Lingerie Store" are more stringent than those placed on what the Code calls "Sexually Oriented Businesses."

3. In placing these restrictions and thresholds on lingerie stores, WVC does not indicate that the relevant code chapters were enacted to protect any legitimate governmental interest, and WVC presents no findings regarding any negative secondary effects purportedly associated with the sale and offsite consumption of lingerie. WVC includes no such findings because none exist.

4. WVC's decision to prohibit Plaintiff from selling lingerie should be seen for what it is: a thinly-veiled attempt to regulate one specific business whose brand seemingly upsets the sensibilities of WVC leadership, even though that business in actuality fails to qualify for the increased zoning restrictions articulated in the chapter of the WVC Code dedicated to regulating "Sexually Oriented Businesses."

5. Because the WVC Code chapters in question target the contents of Plaintiff's speech and not any purportedly associated adverse secondary effects, the Court must apply strict scrutiny in examining the constitutionality of these chapters. In so doing, and as described in greater detail below, the Court must protect Plaintiff's constitutional rights and grant declaratory, injunctive, and monetary relief in favor of Plaintiff.

## PARTIES

6. Plaintiff HH-SALT LAKE is a Utah limited liability company with its headquarters and principal place of business located in Salt Lake County, Utah.

7. Defendant WVC is a municipality created and existing under Title 10 of the Utah Code.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331 and 28 U.S.C. Section 1343 because several of Plaintiff's claims arise under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. Section 1367, as the violation of Plaintiff's civil rights under the Constitution of the United States and the violations of Utah state law arise out of a common nucleus of operative facts and form part of the same case or controversy under Article III of the United States Constitution.

10. This action may be brought in the Central Division of the District Court pursuant to the provisions of 28 U.S.C. Section 2201. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant resides in the Central Division of the District of Utah and the events giving rise to Plaintiff's claims occurred there.

## GENERAL ALLEGATIONS

**The WVC Municipal Code**

11. As a municipality within the State of Utah, WVC has the authority under Utah's Municipal Land Use, Development, and Management Act ("**LUDMA**"), to enact and enforce ordinances within its incorporated limits, as allowed by the laws of Utah and the United States of America.

12. WVC has exercised this authority by enacting its own set of municipal ordinances. The currently-operative ordinances are memorialized within what is styled as "The West Valley City Municipal Code" (hereinafter the "**WVC Code**" or the "**Code**").

13. Within the WVC Code, Chapter 17-5 is dedicated to the regulation of what the Code terms "Sexually Oriented Businesses."

14. The designation of a business as a "Sexually Oriented Business" has substantial repercussions. Among other things, such businesses are only able to operate within certain limited districts designated for such uses. Even within such districts, these businesses are subject to heightened permitting and licensure requirements.

15. Chapter 17-5's stated purpose is to "establish reasonable and uniform regulations governing the time, place, and manner of operation of sexually oriented businesses and their employees in the City." The Chapter also states that it "shall be construed to protect the governmental interests recognized by this Chapter **in a manner consistent with constitutional protections provided by the United States and Utah Constitutions**." (emphasis added).

16. Included within the businesses subject to the regulations of Chapter 17-5 are those the meet the definition of an "Adult Bookstore or Adult Video Stores."

17. Chapter 17-5-104 defines an "Adult Bookstore or Adult Video Store" as, among other things, a commercial establishment "[w]hich excludes minors **from more than 15 percent of the retail floor** or shelf space of the premises…" (emphasis added).

18. Elsewhere in the WVC Municipal Code, Section 7-1-103 defines a "Lingerie Store" as a retail establishment meeting any of the following criteria:

    a. Over **five percent** of the floor area is devoted to the sale of **lingerie, adult novelties, and adult marital or sexual aids**;

    b. **Lingerie, adult novelties, and adult marital or sexual aids** account for **five percent or more** of gross sales; or

    c. The establishment is marketed as a Lingerie Store or adult establishment.

(emphasis added).

19. Chapter 7-1-103's definition of a "Lingerie Store" is wholly separate from and unrelated to Chapter 17-5's regulation of "Sexually Oriented Businesses." Being classified as a "Lingerie Store" does not equate to being classified as a "Sexually Oriented Business" under the WVC Code.

20. Chapter 7-1-103 does not indicate that it was enacted for the purpose of protecting governmental interests in a manner consistent with the United States and Utah Constitutions. The Section contains no findings regarding any negative secondary effects purportedly associated with the sale and offsite consumption of lingerie that it seeks to combat.

21. In another part of the WVC Code, Chapter 7-6 is titled "Zones and Districts." Chapter 7-6 is the code chapter dedicated to addressing the zoning standards throughout the municipality.

22. Code Chapter 7-6-301, the section specifically addressing commercial and manufacturing zones, disallows the operation of a "Lingerie Store" in eight (8) of the twelve (12) commercial zoning districts established by the WVC Code, including the "Decker Lake Station Overlay Zone."

23. Taken together, the WVC Code allows a business to dedicate **up to 15 percent** of its retail store to the sale of items such as sexually explicit films, literature and other representations, as well as instruments, devices, novelty items and/or paraphernalia commonly used in connection with sexually oriented activities (hereinafter collectively referred to as "**Adult Materials**") without being classified as a "Sexually Oriented Business" subject to increased regulation. However, if a business sells lingerie in combination with some of those same Adult Materials – namely sexual aids or adult novelties – then if merely 5% of the retail floor space or

gross sales of that business come from those items **or** lingerie, then that business qualifies as a "Lingerie Store" and cannot operate in two-thirds of the commercial zones within the municipality.

24. The WVC code makes no justifications as to *why* operation of lingerie stores is subject to these thresholds or why they are disallowed in so many zones where other clothing stores and general commercial retail establishments are allowed to operate.

**Plaintiff Confirms that the Store Does Not Qualify as a "Sexually Oriented Business"**

25. In or about the Summer of 2021, Plaintiff began internal planning in order to potentially open a store within the WVC municipal limits (the "**Store**").

26. Plaintiff planned for the Store to carry a robust retail inventory, the majority of which would consist of clothing items such as novelty t-shifts, pajamas, and lingerie.

27. Plaintiff also planned to dedicate a small portion of the retail floor space in the Store to selling Adult Materials.

28. Plaintiff planned to have the portions of the Store's retail floor space dedicated to the sale of Adult Materials be totally segregated from the other parts of the store (the "**Specialty Area**"). The Specialty Area was designed to be blocked from the view of the rest of the store, and minors would be prohibited from entering therein.

29. As part of this initial planning process, Plaintiff dedicated significant time and resources to understand if and how WVC would regulate the sale of adult materials in the Store.

30. Because Plaintiff intended for the Store's Specialty Area to make up less than 15% of its retail floor space, and because the rest of the store would be dedicated to general retail, Plaintiff believed that the Store would not qualify as a "Sexually Oriented Business" as defined under WVC Code Chapter 17-5.

31. To ensure that this understanding was correct, on or about September 1, 2021, Plaintiff, through its agent, reached out to WVC leadership via email to confirm its understanding on the subject.

32. In that email, Plaintiff cited the Code's definition of "Adult Bookstore or Adult Video Store" and indicated that Plaintiff

> [I]s interested in opening a retail establishment selling a small portion of adult materials (<15%). If those items are limited to a 'specialty area' which is prohibited to minors and screened from view, and makes up less than 15% of the retail floor and/or shelf space, would the store be classified as general retail?

33. Later that same day, Jody Knapp, WVC's Zoning Administrator, responded stating that

> [I[f it's a retail store and the adult products are less than 15% of the floor area then it is not an adult business and would be considered general retail. For example, the Blue Boutique is located in West Valley and they are retail.

34. Ms. Knapp also indicated that Plaintiff "just needs to provide a floor plan outlining that the floor area is not over the 15%..." A true and correct copy of this email correspondence is attached hereto as **Exhibit A**.

35. To date, WVC has never taken the position that the Store qualifies as a "Sexual Oriented Business."

**Plaintiff Relies on WVC's Representations**

36. Based upon Ms. Knapp's representations, which were made in her official capacity and on behalf of WVC, Plaintiff took steps to open a store in WVC.

37. More specifically, Plaintiff promptly applied for a WVC business license on or about February 9, 2022.

38. Plaintiff procured a commercial property to lease for the Store, located at 2194 West 3500 South, Suite D1 (the "**Premises**"). Plaintiff also invested significant time and money in the design and construction of the Premises.

39. Plaintiff only took these steps because, beginning with Ms. Knapp's representations in September 2021, and continuing consistently up until late July 2022, Plaintiff received numerous indications that it would receive a business license and be allowed to operate the Store at the Premises. By way of example, some of these indications included:

   a. Indicating that the Store had "passed" the Commercial Planning and Zoning Pre-Site Approval by WVC Planner Daniel Bush on or about February 9, 2022;

   b. Numerous conversations on the matter between representatives of Plaintiff and representatives of WVC; these conversations took place via phone, email and at times in person;

   c. WVC's inducement of Plaintiff to pay fees associated with various stages of the approval process;

40. But for Ms. Knapp's representations on behalf of WVC, and WVC's continued indications that Plaintiff's business license would receive approval, Plaintiff would not have invested the time, money and resources that it did into establishing the Store in WVC.

**WVC Abruptly Changes Course and Indicates that it will Deny Plaintiff's Business License**

41. On or about July 18, 2022, after more than ten (10) months of communication, and after receiving various levels of approval, Plaintiff received notice that its business license for the Store was being denied by WVC. This notice, which came in the form of a letter from WVC Planner Daniel Bush, was the first indication that the Store's business license would not be approved based on Plaintiff's anticipated sale of lingerie.

42. In support of its decision to deny Plaintiff a business license, Mr. Bush informed Plaintiff of the following:

> You have applied to operate a business called 'Hustler Hollywood' at 2194 West 3500 South, Suite D1. The proposed business is described in the business license application as offering 'general retail, lingerie, and gifts.' This description is consistent with signage and advertising for the proposed business and other Hustler Hollywood locations that market the availability of lingerie and adult novelties. Accordingly, the proposed business is classified as a 'lingerie store' pursuant to West Valley City Municipal Code Section 7-1-103(152). This property is included within the Decker Lake Overlay Zone. Lingerie stores are prohibited within the Decker Lake Overlay Zone by West Valley City Municipal Code Section 7-6-301… Since the business may not be lawfully licensed at the proposed location, the application is denied.

A true and correct copy of Mr. Bush's letter is attached hereto as **Exhibit B**.

**Plaintiff Timely Appeals WVC's Decision**

43. On August 1, 2022, Plaintiff timely appealed WVC's denial of the Store's business license in writing, as required by WVC Code Chapter 17-1-106-107.

44. A hearing regarding WVC's denial of the business license was scheduled and took place before by the License Hearing Board of West Valley City on August 29, 2022. The Hearing Board indicated that it would deny Plaintiff's appeal later that same day.

45. However, subsequent to these indications of denial, Plaintiff and WVC agreed to stay the submission of a final order in an effort to find a negotiated resolution to the matter.

**Plaintiff is Arbitrarily Forced to Alter Business Operations to Obtain a Business License**

46. In the process of attempting to reach a negotiated resolution, Plaintiff dedicated significant time and resources to finding both short- and long-term solutions to the dispute regarding its ability to operate its business created by WVC.

47. As part of this process, WVC invited Plaintiff to submit a proposed change to the WVC Code that would resolve the current Code's arbitrary discrimination against stores engaging in the sale of lingerie.

48. Plaintiff agreed to do so, on the condition that their request be taken seriously, and that it be allowed to open the Store immediately while temporarily excluding the lingerie products it would typically sell from its inventory while the parties attempted to find a more permanent solution to the dispute.

49. But for WVC unconstitutionally conditioning Plaintiff's receipt of a business license on the exclusion of its lingerie products from the Store, Plaintiff would have included lingerie products within the inventory found at the Store.

50. In or about early January 2023, Plaintiff opened the Store at the Premises without any lingerie for sale. Plaintiffs only forewent the sale of lingerie products because WVC refused to grant it a business license otherwise. This decision represented an effort to mitigate the damages it had already incurred based upon the significant investment it made into the Premises in reliance upon WVC's myriad representations.

51. Subsequently thereto, in the Spring of 2023, Plaintiff worked with WVC to submit proposed changes to the Code that would remove the arbitrary and unjustifiable discrimination against stores that sell lingerie and the speech exhibited by these stores.

52. On or about March 23, 2023, Plaintiff filed an application to amend/modify the code, as per WVC's request. A true and correct copy of which this application is attached hereto as **Exhibit C**.

53. After public input and hearings before the WVC Planning Commission, on or about April 26, 2023, the Planning Commission agreed with the request to amend/modify the Code, and forwarded a positive recommendation to the WVC City Council.

54. Unfortunately, on June 20, 2023, without reason, explanation or supporting justification, and in direct opposition to the recommendation of the Planning Commission, the

WVC City Council finalized its decision to reject Plaintiff's proposal to amend the Code. Upon finalization of this decision, Plaintiff was left without any further administrative remedies on the matter, making it ripe for judicial review.

**Plaintiff Has Been Deprived of Constitutional Rights and Suffered Monetary Damages**

55. Based on WVC's rejection of Plaintiff's proposal to amend the Code, Plaintiff remains prohibited from selling lingerie at the Store under the operative WVC Code.

56. In rejecting Plaintiff's proposal and in making Plaintiff's ability to receive a business license contingent upon Plaintiff altering its business and foregoing the sale of lingerie at the Store, WVC exercised the rights granted to it under the color of Utah state law and deprived Plaintiff of its Constitutionally guaranteed protections under the First and Fourteenth Amendments.

57. Plaintiff has invested significant amounts of money and resources into the construction and preparation for the Premises to operate as originally intended, including for the sale of lingerie. Plaintiff's monetary expenditures on the Store and the Premises to date are in excess of $2,200,000.00.

## FIRST CAUSE OF ACTION
### (Equitable Estoppel)

58. Plaintiff realleges and incorporates all the preceding paragraphs of this Complaint as if fully set forth herein.

59. WVC made several admissions, statements, and/or undertook actions that indicated that the Store would receive approval to receive and operate a business license.

60. These actions included Ms. Knapp's September 2021 statement that the Store would be considered "general retail," Mr. Bush indicating that the Store had "passed" the Commercial Planning and Zoning Pre-Site Approval in February 2022, as well as the myriad

conversations regarding the approval of the Store that took place via phone, email and in person between WVC and Plaintiff, and WVC's inducement of Plaintiff to pay fees associated with various stages of the approval process.

61. Plaintiff relied upon the admissions, statements, and/or actions of WVC in various ways, including by applying for a business license, procuring the Premises, and investing significant time and money in the design and construction of the Premises.

62. At all times, Plaintiff was forthcoming about its intent to sell lingerie at the Store.

63. Prior to July 2022, WVC never gave any indication that Plaintiff's intentions to sell lingerie at the Store could affect its ability to receive a business license for the Store.

64. WVC's admissions, statements, and/or actions were inconsistent with its abrupt denial of the Store's business license in July 2022, and its ultimate rejection of Plaintiff's proposed Code changes.

65. Plaintiff relied upon the admissions, statements, and/or actions of WVC in various ways, including by applying for a business license, procuring the Premises, and investing significant time and money in the design and construction of the Premises.

66. But for WVC's admissions, statements, and/or actions, Plaintiff would not have taken the steps that it did to open the Store.

67. As a result of WVC's admissions, statements, and/or actions, Plaintiff's subsequent reliance thereon, and WVC's later denial of the Store's business license, Plaintiff has been damaged in an amount to be determined at trial but not less than $2,200,00.00.

## SECOND CAUSE OF ACTION
### (Violation of Plaintiff's First Amendment Rights)

68. Plaintiff realleges and incorporates all the preceding paragraphs of this Complaint as if fully set forth herein.

69. The rights enforceable by 42 U.S.C. § 1983 include, among other rights guaranteed by the United States Constitution, the right to be free from discriminatory municipal action that violates the First Amendment of the United States Constitution.

70. Plaintiff seeks to engage in protected expression at the Premises in the form of the sale of lingerie for offsite consumption.

71. The definition of a "Lingerie Store" found in Chapter 7-1-103 combined with the prohibition of operating such stores in the Decker Lake Station Overlay Zone found in Chapter 7-6-301 is a content-based regulation that targets the speech in question, instead of the secondary effects purportedly associated with such speech. As such, these Code Chapters are presumptively invalid, and cannot withstand strict scrutiny.

72. In prohibiting Plaintiff from selling lingerie at the Store based on the aforementioned Code Chapters and then rejecting Plaintiff's proposal to amend the WVC Code, WVC has acted under the color of state law, namely the powers granted to it by LUDMA to enact and enforce ordinances within its municipal limits.

73. By acting as detailed in the preceding paragraph, WVC has deprived Plaintiff of its First Amendment right of freedom of speech.

74. Based upon the foregoing, Plaintiff is entitled to a judgment declaring that WVC has violated Plaintiff's First Amendment Rights, as well as an injunction stopping application of the aforementioned ordinances, monetary damages resulting from WVC's actions, and reasonable attorney fees associated with brining this action.

### THIRD CAUSE OF ACTION
### (Violation of Plaintiff's Equal Protection Rights)

75. Plaintiff realleges and incorporates all the preceding paragraphs of this Complaint as if fully set forth herein.

76. The rights enforceable by 42 U.S.C. § 1983 include, among other rights guaranteed by the United States Constitution, the right to be free from discriminatory municipal action that violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

77. WVC's determination that Plaintiff cannot sell lingerie at the Store violates Plaintiff's rights under the Equal Protection Clause, which prohibits municipal actors from discriminating based on the content of expression.

78. The Fourteenth Amendment's Equal Protection Clause instructs that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

79. Under the Fourteenth Amendment, a law that impermissibly interferes with the exercise of a fundamental right, such as freedom of expression, is subject to strict scrutiny.

80. The WVC Code's arbitrary imposition of more stringent regulations and thresholds on "Lingerie Stores" when compared to other retailers or even "Sexually Oriented Businesses" constitutes patently unequal treatment that is arbitrary, capricious, unreasonable, has no logical basis and disadvantages "Lingerie Stores" when other, similarly situated merchandisers were not subjected to the same deprivation of rights.

81. WVC knew how Plaintiff intended to use the Premises as early as September 2021; WVC certainly knew how Plaintiff intended to use the Premises when it denied the business license for the Store in July 2022 after numerous approvals and conversations on the matter.

82. WVC has refused to allow Plaintiff to operate the Store at the Premises as they intended, and, in so doing, has deprived Plaintiff of the right to engage in protected expression.

83. Plaintiff is similarly situated to all other non-Sexually Oriented Businesses in the area, which are presently permitted to operate and to engage in speech, while Plaintiff has been denied those rights.

84. Upon information and belief, WVC has intentionally treated Plaintiff differently from other similarly situated retailers by prohibiting Plaintiff from engaging in business as a "Lingerie Store" within the Decker Lake Station Overlay Zone.

85. There is no rational basis for WVC's difference in treatment of Plaintiff and other similarly situated retailers.

86. By prohibiting Plaintiff from selling lingerie at the Store based on the aforementioned Code Chapters and then rejecting Plaintiff's proposal to amend the WVC Code, WVC has acted under the color of state law, namely the powers granted to it by LUDMA to enact and enforce ordinances within its municipal limits.

87. By acting as detailed in the preceding paragraph, WVC has deprived Plaintiff of its Fourteenth Amendment right of equal protection under the law.

88. Based upon the foregoing, Plaintiff is entitled to a judgment declaring WVC's definition of a "Lingerie Store" in Chapter 7-1-103 combined with the prohibition of such stores in the Decker Lake Station Overlay Zone in Chapter 7-6-301 violates Plaintiff's right to Equal Protection under the Fourteenth Amendment of the United States Constitution, as well as an injunction stopping application of the aforementioned ordinances, monetary damages resulting from WVC's actions, and reasonable attorney fees associated with brining this action.

### FOURTH CAUSE OF ACTION
**(Appeal of Land Use Decision Utah Code Ann. § 10-9a-801)**

89. Plaintiff realleges and incorporates all the preceding paragraphs of this Complaint as if fully set forth herein.

90. Under Utah's Municipal Land Use, Development, and Management Act ("LUDMA"), Utah Code Ann. § 10-9a-801, a land use applicant or adversely affected party may file a petition for review of a land use decision with the district court.

91. Such a petition must be filed within 30 days after the decision is finalized.

92. Also under LUDMA, this Court has the authority to determine whether the land use regulation is expressly preempted by, or was enacted contrary to, state or federal law.

93. While LUDMA generally requires that courts presume that a final land use decision made by a land use authority is valid, such a presumption is not required if the land use decision in question is deemed to be either arbitrary and capricious or illegal.

94. Without discussion, explanation or justification, the WVC City Council arbitrarily and capriciously rejected the recommendation of the Planning Commission to approve the modification to the code.

95. Furthermore, LUDMA deems a land use decision to be illegal if the decision is contrary to law.

96. As articulated in detail above, when taken together, WVC Code Chapters 7-1-103 and 7-6-301 violate the First and Fourteenth Amendments of the United States Constitution, making them contrary to law and therefore illegal.

97. Because the aforementioned Code Chapters are illegal, this Court should not presume that WVC's final decision to disallow the sale of lingerie at the Store was valid.

98. Based on the foregoing, Plaintiff seeks an order from this Court declaring that WVC acted in a manner that was arbitrary and capricious and that, when taken together, WVC Code Chapters 7-1-103 and 7-6-301 violate the First and Fourteenth Amendments of the United States Constitution, making these Chapters illegal and reversing WVC's decision on the matter.

# **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court grant relief to Plaintiff and against WVC as follows:

A. Finding and declaring that WVC is equitably estopped from making Plaintiff's ability to obtain a business license and operate the Store contingent upon its agreement to not sell lingerie therein;

B. Finding and declaring that the WVC Code's definition of a "Lingerie Store" in Chapter 7-1-103 combined with the prohibition of such stores in the Decker Lake Station Overlay Zone in Chapter 7-6-301 violates Plaintiff's First Amendment Rights to Freedom of Speech, as well as its Fourteenth Amendment right to Equal Protection;

C. Finding and declaring that WVC targeted Plaintiff for special treatment on the basis of Plaintiff's protected expression in violation of the First and Fourteenth Amendments;

D. Enjoining WVC and its employees, agents, and representatives, as well as all persons acting for or in their behalf, from enforcing the WVC Code's definition of a "Lingerie Store" in Chapter 7-1-103 combined with the prohibition of such stores in the Decker Lake Station Overlay Zone in Chapter 7-6-301;

E. Reversing WVC's decision that the Store could not sell lingerie;

F. Awarding Plaintiff monetary damages against WVC for, *inter alia*, lost profits, loss of good will, remodeling and construction costs, and deprivation of constitutional rights;

G. Awarding Plaintiff its reasonable attorney fees and costs under 42 U.S.C. § 1988; and

H. Awarding such other and additional relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury in this matter.

DATED this 20th day of July, 2022.

                                                  FABIAN VANCOTT

                                                  */s/ Kevin N. Anderson*
                                                  KEVIN N. ANDERSON
                                                  SCOTT R. SABEY
                                                  THOMAS B. STOCKARD
                                                  *Attorneys for Plaintiff*